Number 181694, Rafael Lopez-Santos et al. v. Metropolitan Security Services. May it please the Court. My name is Judith Burkhan. I'm here in representation of Rafael Lopez and Ramona Domena. Mr. Lopez is here in court. He's a former court security officer, both of them are, who worked for 32 years as a court security officer in this very building and in the building in Atorrey, et cetera. And the case that's before us, he was part of the original group of 13 who worked with different companies over the course of time because this is federal contracting with the U.S. Marshals Service. But the case that's before us is brought exclusively under local law. It's a diversity case, and it has to do with Law 80. Now, I know all of you are familiar with Law 80, and one thing I want to say at the outset is that this case does not have to do anything with the law that was subsequently passed in January of 2017, which was Law 4, which the judge below relied on. And his definition of employer, which did not exist prior to that. So our case is brought on Law 80, and I think one of the best expositions of what Law 80 is, is in an opinion by Judge Lopez, which was, actually, I forgot to say that I wanted to reserve three minutes. Is it too late to do that for rebuttal? We'll allow it. Thank you. So this clock went down. Law 80, as you well know, is a law which provides, unlike in virtually any jurisdiction in the United States, the continental United States, provides for statutory separation pay. And the issue here is in the particular context of a subsequent company which assumes the only significant asset of the prior company, which is the employer. And that is the contract with the marshal service, through a federal bidding process, which has nothing to do with this case. If they take on any of the liabilities of the prior company, we assert that, in fact, they do, because they have obligations which come about as a result of both Puerto Rico law and with respect to federal law. What's the term in Law 80 that they fall under, the employer here, in your view? Well, I think, you know, there's, unfortunately, successorship is only addressed in one part of Law 80, which is Article 6. And that particular situation under Article 6 in Law 80 is when you have an acquisition, and it talks about successorship. So that does, you're accepting that does not apply here? Well, in essence, the law states that the purchase of a particular company has to reduce from the purchase price any obligations that correspond to the original employer. And so it doesn't directly apply, because as Judge Bessos, one of the few things that he did say in the opinion about the particulars of this case, he said that it was not a purchase. So given that it's not a purchase, all we can do from that is extrapolate. What's the term that you're saying in Law 80 applies to the defendant? I'm sorry, when you mean the term, the characterization of the defendant, what is it? I'm sorry, I don't understand the word term, if you mean... Well, Law 80 imposes an obligation on, what, the employer? Who does Law 80 impose the obligation on? Well, in the successor... But you're saying the successor doesn't apply, that provision? No, no, I didn't say, I said that it's not a successor employer. Correct. What it is is a successor who came into the obligations. What's the word in Law 80 that imposes an obligation on someone that you say these defendants are encompassed by? All right, I don't think there's a specific word. I think if you look at the obligations, let me cite a case that is not in the briefs, and I think it's important to consider. It's called Petrie. Okendo v. Petrie, it's a Supreme Court of Puerto Rico case, and it's available in English. The site is 2006 Puerto Rico, sub Lexus 52. I'm sorry, why is it important here and it's not cited in your brief? What's that? Why is it important today, but it's not cited in your brief? Because as we consider and continue reading and preparing for argument, we come across other case law that is important, and I regret that I did not put it in the brief originally. But as I sit here today and try to answer Judge Barron's question, which is asking for a specific term, I think that this is an analogous situation. If I can make reference to it, or if you would prefer I do a rule, I think it's rule 29 or rule 27 letter afterwards. You can do both. I'm sorry, I can do both. Thank you, Judge Thompson. In that case, there was a discharge in bankruptcy and an acquisition of assets, including basically the entire workforce. I don't think there's any doubt in this case that the standard criteria for successor employer developed under both federal and Puerto Rico law apply in terms of same workforce, same place, et cetera. I'm not going to go into that unless there's any question about that. But in Ocando versus Petrie, the pairing company in the context of a bankruptcy of the Puerto Rico company, the pairing company assumed the assets, and there was a discharge free of liabilities. So the question that the Supreme Court said it was addressing is we must determine whether the sale of assets free of includes the application of the successor doctrine. There's a little bit of, I mean, Judge Barron, you're asking me for a particular term. Well, I'm just, I guess I'm just, this is a basic point. Law 80 applies to some people and not other people. Counsel, it sounds like you're making a. I mean, if you want me to say, if the question is, does law 80 determine that Walden was an employer? My answer has to be no. If that's what the question is. But that doesn't determine what I'm saying is that, I'm sorry. Follow-up question. Yeah. If they're not an employer, how does law 80 apply to them in your view? Law 80 applies under the notion of successorship. So are you saying. It's acquisition of liabilities. And how did they, what is the liability you're saying that they assumed? The liability is that you do not discharge employees without a reasonable basis, without under federal law exploring the credible evidence of their qualifications. You, under Puerto Rico law. But isn't this circular if you're conceding that they were never the employer? That's not the only criterion, Judge Thomas. I mean, it really isn't. I mean, if you look at the Beatry case, you'll see that even though, I mean, the issue is successorship. And I know it's a fine distinction. Not successor employer. If you satisfy the successorship test, then you qualify as an employer, don't you? If it's the issue is successor employer. If the issue is successorship with respect to liabilities, you don't have to satisfy the employer. And there's a provision in law 80 that says that? No. What there is in law 80 is Article 6. And if you look at Article 6, it contemplates the successor company having responsibility for a law 80 claim that arose prior to its becoming a successor company. Counsel, it seems to me that Judge Bezosa himself said there was a considerable injustice in what happened here. But I guess in light of that, you seem to be making an argument that what happened here violates the spirit of law 80. But as I believe Judge Barron is indicating, you are stuck with the language of the statute. And you can't apply the spirit of law 80. You've got to apply the language of the statute. And it is hard to see, if you want to focus on the successor provision, it's hard to see how there was a transfer of a new business in this scenario here, how there was an acquisition of anything. There was basically a request for proposals to replace a contractor who was no longer going to be providing these protective services. And in response to that request for proposals, Walden made a proposal and won the contract. And so there wasn't a transfer of a business. There wasn't an acquisition of anything. There was an acquisition of the contract. There was an acquisition of the furniture, the workforce. Not from the prior company that had the contract. The prior company's contract had expired. Well, the prior company's contract had expired, but the operation was continuous. I mean, midnight on November 30th, 2015, my clients were employed by ACA, as they had been employed by each of the prior successors over 32 years. But there was no relationship between Walden and the prior provider of services. Except that – I'm sorry. No, please go ahead. No, I'm sorry to interrupt. No, I'm just characterizing what I understand the situation to be. There was no relationship between those two entities. They shared a relationship through the marshal service, whoever it was that advertised for these services. But they were not – those two parties, Walden and the prior provider of services, there was no transfer that took place between them. There was no acquisition by Walden of anything that the prior provider of services had provided. Well, I understand the distinction in terms of transfer, and that's one of the reasons why Article VI is difficult to embrace in the context of this lawsuit. But Article VI does give the spirit of the law and the totality of the circumstances that are required to be examined in terms of seeing if there was just cause for this action. I mean, it's just – I guess you're right, Judge Lippes, in some sense that it's a – there has to be something that affects, that gives some right to a person in this particular situation, which is not specifically contemplated under Law 80. My time is up. Thank you. May it please the Court, Your Honors. My name is Luis Perez-Yussi, and I represent the APELI, Metropolitan Security Services, doing business at Walden Security. When the contract was awarded in September 11 of 2015, the appellant here, the APELI, I'm sorry, my client, Walden Security, began the screening process to identify those employees from ACLE that were qualified to be hired by Walden. At the time, Executive Order 13495, which was signed by President Obama in 2009, required a new contractor to have a right of first refusal with all the current employees that wanted to be hired by the new employers when a new contract was awarded. The screening process took here in San Juan. There were two town hall meetings that were held, and both of the appellants applied for the positions. The Executive Order signed by President Obama requires that the employees to be – that are submitting applications be qualified for the positions. In this case, the two appellants, and it is stipulated facts, did not have the individual designated to perform as a CSO has to successfully complete or graduate from a certified federal, state, county, local, or military law enforcement training academy or program that provided instruction on the use of police powers in an armed capacity while dealing with the public. That certificate – Do you disagree that you could have requested a waiver? We had no obligation to request a waiver, and we had no resource to request a waiver. I said, do you disagree that you could have requested a waiver? We could have requested a waiver, but it was not going to be granted, and I'll tell you why. The waiver under the clause in the contract with the United States Marshal Service, this certificate – the certificate, let's just call it a certificate. The certificate, the clause in there does not provide for a waiver. The only instance in which a waiver could be produced or requested is when there is a second requirement besides a certification of having three years of experience, and then the three years could be waived if they were employed by the private contractor or the contract was going to be serviced in a geographical area of the United States where there was a lack of CSOs available. That is the only instance in which a waiver could be requested. Under the clause which my client applied, which is a certification, it does not provide for a waiver. There is no obligation. You said or. So three years or lack of CSOs. Right, but that's only – Why didn't these people have the three years experience? No, they did have – they complied for that part. So why couldn't you request a waiver? Because the waiver could only be requested for the lack of the three years experience, not for the lack of the certification. There are two different clauses in the contract with the United States Marshals Service. One is a certificate. The other one is a three years experience. For the three years experience, you could request a waiver under two circumstances, whether you have – you know, you were previously employed or, you know, maybe here in Puerto Rico or someplace else where there's not enough CSOs. I thought the record showed that the Marshals Service would have entertained a waiver if one was requested. Is that wrong? No. The letter from the Marshals Service, all it says is that the waiver was never requested. If it would have been requested, they would have considered it. That's it. They didn't say they would have been granted it. That's a bad thing to say if they couldn't have. But they – all they said was that we would consider it. But did you try and find out whether your interpretation of the contract was right, that they would have rejected the waiver? Yes, I did. And the contract is clear. Did you get – were you told by the Marshals Service that they would have rejected the waiver if requested? Yes, sir. Does the record show that? No, there's no record of that. I mean, but the contract is very clear. It's just odd. These people have been doing the job and apparently doing it effectively for 30-some years. So they've demonstrated their ability to be competent workers doing specifically what they're doing. It just seems odd that someone would not have at least submitted a written request for waiver. I mean, if they had said no, then they say no, but did not even request the waiver, particularly when our colleagues on the district court were urging you to do so. Well, I agree that it's not a – I mean, I can sympathize with the appellants here. I mean, no doubt that the service here was long and it was productive. Well, can I ask you a question? Sure. If the Marshals Service today told you they would grant the waiver, would you then request it? I mean, I would have to – I'm not speaking on behalf of my client, but, yes, I mean, if that's the case. Well, then, is there a reason for this dispute to be resolved until you have had a chance to work out whether the Marshals Service would grant the waiver? Not anymore. I mean, they filed a lawsuit on the low 80 here, and I mean – No, but I'm saying if you're just representing to us that the only reason this dispute is live is because you're under the impression that if you asked for a waiver, it would be rejected, but there's nothing in the record to show that that's clear, then is there – Let me bring something up. And you're saying that if you did ask for a waiver and they accepted it, you'd be happy. But let me bring something up. At the same time that the contract was awarded with the First Circuit, the same – they changed contract in other circuits. And my client was awarded also the contract for the security services in the Eighth Circuit. Something very similar happened there. Some – you know, an employee with a previous with less than years than the appellants here, they had about – I think about 18 or 20 years, one person. They went and filed the claim before the Wage and Hour Division of the Department of Labor, which is, by the way, the correct venue to file the claim under the executive order signed by President Obama, which, by the way, has been revoked by President Trump. That executive order is no longer in place as of right now. But the claimant in that case in Arkansas filed a claim before the Wage and Hour Division and presented evidence regarding previous training and regarding a possible waiver, and the Wage and Hour Division ruled against the claimant there. I can give you the site of the case. Saying what? I'm sorry? What was the basis of the ruling? That the contract did not provide for a waiver and that the person did not qualify for the contract under that clause. See, the clause in the contract of the certification does not provide for a waiver. The only instance, and the contract is very clear, the only instance that the contract provides for a waiver is in the three years' experience. That's it. There's nothing else to it. But you've got three years. You've got over three years. I'm not understanding. Because they were not rejected because of the lack of three years. They were rejected for lack of certification. Your position is if you have less than three years' experience, you might get a waiver for that. Exactly. But there's no provision for a waiver if you don't have law enforcement. That's correct. But this turns on our conclusion that the contract is clear on that point, that the marshal service would not take a different view. But nothing in the record indicates what the marshal service's view of that is. Is that right? No, there's nothing in the record. Is there any reason not to ask the marshal service before we decide the case as to what their view of their contract is? I don't know if we can do that right now. I don't know if we can do that right now or not, Your Honor. At this stage of the proceedings, I don't know that we can do that. I mean, I guess your position is that your client was not obligated to seek a waiver. Is that your position? That's my position. I mean, I understand that, but you just represented to us today that the only reason you're, in fact, not asking for the waiver is because the contract prohibits it. Right. It doesn't allow the waiver on the reason for the rejection of these two appellants. You decided that view without being informed that that is the marshal service's view. Is that right? Well, Your Honor, I mean, you have to bear in mind my client has several contracts and has been in business for many, many years with providing services for the federal government. So I don't know what went on. I'm just saying right here you could not represent to us that the reason you're of the view that you are is because you know that is the marshal service's view. You're just of that view because that's how you've read the contract on your own. That is correct. That is correct, and that's the position that my client took. But you also represented to us that if the marshal service took a different view of the contract, you'd then seek the waiver. Well, I would, I mean, myself, but I cannot speak to my client, you know, for my client. Is this case gone through the appellate settlement process? Yes, it did. It did. Yes, it did. And I want to touch on Law 80. I mean, Law 80 and the questions that you asked, Sister Counsel, were very clear. I mean, Law 80, the first requirement is for the person to be employed by the employer who, by the entity, let's just call it that way, by the entity against whom they're filing the lawsuit, seeking, you know, the severance or the mesada, how we call it here in Puerto Rico. Here, the two appellants were never employed by my client. I mean, and there was no successor at all under the law. There was no acquisition, as you correctly stated. There was no acquisition. There was no transfer of business. There was never any negotiations whatsoever that took place between ACL and Walden. It was all because of the, you know, the contract was awarded through the United States Marshal Service. The Petry case that Sister Counsel mentioned, even though it's not in her briefs, I mean, I've read it a few times. I haven't read it for a while, but it was an acquisition through a bankruptcy court. It was an asset acquisition. It was different because there they had the process of going through a bankruptcy court and acquiring the assets of the, you know, of the entity that went bankrupt. Here, there's no such thing. Here, the two employees, the two appellants, I'm sorry, were never employed by my client. Now, even if the successor-employer doctrine would apply, which I'm not saying that it would, but let's just say for sake of argument that it applies. Well, I'm sorry. They were never employed, but that executive order was in force at that point. That's correct. So there could not have been a legitimate denial of reemployment had they been qualified. So it is a little different. Based on the executive order, not based on Law 80. You're correct. But the requirement under the executive order is to offer the right of first refusal to the employees currently employed by the departing contractor, let's call it that way. And we did that. We offered, you know, my client offered them the opportunity to come abroad and be employed by Walden. But the executive order also requires that the employees be qualified for deposition. And one of the qualifications that we have stated is a certification required by the Marshall Service. I guess I'm trying to figure out is whether the executive order somehow functioned in conjunction with Law 80, given that it was in existence. It could not. It could not. They're both being raised and actually the appellants in their briefs kind of made the argument that it could not, and I'll tell you why. Law 80 provides for a remedy based on, you know, years of service and salary, and it's only when the employee has been unjustly dismissed, period. The executive order provides for a remedy for those employees who were not hired by a new contractor, and that remedy has to be, you know, it's a make or remedy, similar to the NLRB. But it has to be filed before the Wage and Hour Division of the Department of Labor. That's what the executive order at the time stated. As I said, that has been revoked by President Trump by now. So the two laws, I mean, the executive order and Law 80 cannot commingle. They're inconsistent with each other. You have to choose either one of the remedies. And the remedy here actually is executive order, which is actually preempted Law 80 in that sense. But even going back to a successful employer, even if we had a scenario for a successful employer, Law 80 divides the liability between the new employer and the former employer. If the employees are not hired by the new employer, then the former employer is the one who's liable for the severance for those employees. And that's what happened here. So if you want to, if the successor doctrine were to apply here, which I'm not saying it does, but if it were to apply here under the Law 80, then it would be ACAL, the one responsible party before the two appellants, because they were never hired by my client. And the law is very clear in that. And it divides, as I say, it divides the liability between the two entities. So, you know, any way you look at it, there's no reason for my client to be liable in this case under Law 80. Where in the record can I find the waiver? Is it in the appendix? I'm just trying to figure out where. It's in the contract. Yeah. The marshal service. Let me tell you. Yeah, let me tell you the page of the. There's a provision called qualification standards, C.4.1. That's correct. And is the only place the waiver exists? It's on page, I have so many numbers here, but it's C.4.1. C.4.1. Right. And then it doesn't have any numbers going down. Right. And that's the only place the waiver exists? Yes. And that's that last bullet point is the only place where there's a waiver? That is correct. That is correct. And if you look further up on C.5.1.4, there's a sentence there in the contract. So you're. That says the government will not waive the minimum CSO qualification requirements stipulated in Section C.4.4 qualification. That relates. Yeah. So this is the provision. But the thing in that bullet point that talks about the waiver, is that the sentence that has the waiver, it says this requirement is not applicable to CSOs currently serving in the capacity or under the preceding contract and may be waived. And then it says this requirement is waived for separated or returning CSOs provided they have served within the previous three years. Right. That all relates to the three-year requirement. To the requirement of three years of experience. That's your view. Yes. But it says to have at least three years as a certified law enforcement officer. So why might that not also be referencing the law enforcement officer requirement? Because there are different provisions in the contract, Your Honor. With all due respect, I mean, the provision related to certification is the previous paragraph in the contract. And this one, when you read the language, and it's a fairly long paragraph, but when you read the language in that paragraph, it is very clear that it only applies to that requirement of the three years of service. The district court didn't seem to read it that way. Because the fact the district court correctly, in my opinion, applied, you know. No, the district court has a footnote saying that it seems like you could have asked for a waiver and it was bad faith not to ask for a waiver, but he can't do anything about it under Law 80. Well, I mean. He doesn't take the view that there's no basis for a waiver, which is what you're saying. I mean, we could probably disagree on the application of that and the interpretation of the district court. But the bottom line is that the cost of action that we have before us is only applicable as to Law 80. So even, you know, seeing it the way you see it, they were never employed by McClellan. There was never transfer of business here. So they are filing the claim under Law 80 only. There is no other claim in this case under the executive order, violation of the executive order or violation of the contract or anything. So. So I gather it's your argument that, given your position on the waiver, that your client had no choice but to do what it did. That is correct. This was not so the. You don't accept the criticism of the district court. I accept it. Somebody who I think it's fair. Yeah. I don't think it's fair. It comes from somebody who might respect. That was an unfair question. But she actually was a partner in our firm many years ago. This sort of looks awful to your client. It really does. What's happened here looks awful. It's not, you know, you, over the years, you litigate cases that are not, that are good law, but they're not sympathetic. And I can, you know, I can. When you say that, I just am puzzled because that's predicated on the understanding that if you sought a waiver, the marshal service would reject it because the contract would not allow it to be granted. But you don't know that the marshal service would take that view because you haven't asked them. So I just don't understand why you're pursuing the defense of this. If you would like, if your preferred position would be to have the waiver granted, then it just seems odd not to ask whether the marshal service would grant it. I'm not saying I. But if your preferred position is that you don't want a waiver, even if it's available, then that's a different view. I'm not saying that. I'm saying that the provision on the contract does not provide for a waiver. And I'm saying that if the marshal service told you that their understanding of the contract was that it did, would that change your view? But they didn't. There's nothing in the record to that. Because you haven't asked them. I don't know if my client did over there or not. Right. So we have to assume you haven't asked them. There's nothing in the record. Right. So that means the record shows you haven't asked them. I don't know. You could change that by asking them. But there's nothing in the record. No. If I don't have anything else, I'll rest from my briefing. Thank you. Very briefly, if I can address the waiver question. The waiver is not as set in stone in the contract as Judge Barron stated, but also it's important to note that these two individuals were told by Roberto Santiago, who was the supervisor, supervisor first of ACAL, first of MDM, then of ACAL, and then of Walden, he told these two individuals and helped them draft the waiver request. Who is this who did that? I'm sorry? Who is this who did that? The lead supervisor. Oh. All right. Is this in the record? Yes, it's in the record. Oh, yes. This is in the record, and it's also in the record that we were only able to obtain the ACAL contract, which was one previous to the Walden contract. And the ACAL contract had the exact same provision, and these two CSOs were allowed to work under that contract for three years. Roberto Santiago, who is the lead supervisor or the district supervisor who held that position through the changes of companies, he indicated that in his experience it was in the previous contract. Also, if you look at the contract itself, portions of which are in the record, it's in the appendix, you will see that there are places where ACAL made changes, with marshal service made changes, et cetera. In answer to your question about whether it was ever asked for, the district judges obviously requested it of the U.S. Marshal Service, and the U.S. Marshal Service, there's a fellow named Gary Inslee, said that if Walden asked for it, they would be willing to consider it. So that's basically what the record says, and there's no evidence that Walden asked for it. He also criticizes the United States Marshal Service. He says the United States Marshal Service declined to take action to help obtain these experienced CSOs, and Walden refused to request waivers from the United States Marshal Service. So he seems to always suggest that the Marshal Service itself did not take actions that could have been helpful. There are contemporary letters and emails by this fellow named Gary Inslee, and there's also the response by the Marshal Service to Judge Tedesco's and Judge Delgado's letter of December 1st. There's a response a few days later. And they both say their position was the U.S. Marshal Service would consider it if it were asked for, but we won't do anything if the company doesn't ask for it. So therein lies Judge Bessosa's criticism, I believe, because all of this was very poorly handled in any way in consideration of the executive order and the regs under the executive order, the 29 CFR 9.12, that say that they have to accept credible evidence of qualification. So I know that the issue – I'm sorry, can I continue speaking for a moment? I'll give you another minute. Okay. No, I just know the issues around Law 80 are thorny, and I understand that. However, I think the issues on the qualifications of these two individuals are unquestionable, and I beg to differ with my esteemed opposing counsel as to whether or not it was prohibited under the contract. There's no prohibition under the contract. And as you read the contract, you'll see the legend at the bottom that says, these are changes requested by Yakal, et cetera. And we have just the reality of 32 years in which this requirement existed, at least in the last three contracts, and it was never an impediment to these individuals being excellent CSOs. Did this issue ever come up at all with the prior contractors? No. I mean, there's no evidence – I can't affirm at this moment, but there's no evidence in the record that it ever came up. And Mr. Lopez, who was here, was, you know, very experienced and very well respected. But the terms of the contract were the same? We were able to get the MVM contract, I mean, the Yakal contract, which is the immediate predecessor. There's the exact same provision. And we have the testimony. And no waiver was requested for that one? No waiver that we know of in the record. There could have been something internally. We were unable to get that information, but it was unquestioned that they were allowed to continue working and that they did not have this experience. And they did not have this experience because they were part of the original group. They were the most experienced, and there were only two left from the original group when evidently there was no requirement that there be prior police experience. With the prior contract, are you aware if there was a reapplication process similar to what was described here? I'm not aware. I have no reason to think that there wasn't. But it's not in the record. There was just continuous service. I mean, the town hall meeting and all that kind of thing that was particular to Walden, I don't believe there was, but I can't represent that that's in the record. Opposing counsel, I think, suggested that you might have been able to obtain relief under that executive order, that there was a way of doing that, but that was not. Obviously, no such relief was pursued. Is that correct? Yeah, there was. We did not. We made a strategic decision not to pursue that, obviously, and it was also these two individuals were very affected by this, and that was part of the reality of it. But I should say, I heard opposing counsel use the word preemption. That was never alleged. That was never litigated. You know, there's nothing to indicate that that's an exclusive remedy. There is a Department of Labor mediation and adjudication. Did you say you made a strategic decision not to pursue that? Yes, because of the way it is. I mean, I represent fired employees. I don't want to say fired, but just people who lose their jobs all the time. And after 32 years of service, when you are abruptly terminated or your job ends, it was not the view of these two individuals that that's what they wanted to pursue. And there's no exclusive remedy. Thank you. Thank you.